## Case No. 8,557.

### LOVREIN v. THOMPSON.

[1 Spr. 355.] [2]

District Court, D. Massachusetts. March, 1857.

SEAMAN'S WAGES—MINOR—SUIT BY FATHER—DESERTION — SHIPPING ARTICLES — JUSTIFIABLY SEPARATED — TO WHAT ENTITLED— CHARGES— USAGE.

1. Under the general maritime law, desertion does not necessarily work a forfeiture of all antecedent earnings; it rests in the discretion of the court.

[Cited in Swain v. Howland, Case No. 13,661; The Balize, Id. 809.]

2. Even a statute desertion by a minor, who had engaged in a whaling voyage without his father's consent, is no defence to a suit by the father for his services.

3. The lay in the shipping articles was adopted as the rule of damages, the father not claiming any other.

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [Reported by F. E. Parker. Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

4. If during a whaling voyage, a seaman be justifiably separated from his ship, he is entitled to such proportion of the whole proceeds, as the time he served bears to the whole time of the voyage.

[Cited in Antone v. Hicks, Case No. 493.]

5. Certain charges by the owners disallowed, usage notwithstanding.

[Cited in Frates v. Howland, Case No. 5,066.]

In admiralty.

R. C. Pitman, for libellant.

A. Mackie and A. S. Cushman, for respondent.

SPRAGUE, District Judge. This is a libel by a father for the services of his minor son, in a whaling voyage. The son was born in New Hampshire, in the year 1834. Without the knowledge or consent of his father, he left his home in New Hampshire, went to Vermont and Maine, where he remained a considerable time, and thence to Boston. In this city he soon found himself in a shipping office, where he was induced to engage in the whaling service. He was then nineteen years of age, and so stated to the shipping master, who told him. that would not do, he must be twenty-one; he then said he guessed he was twenty-one, which, without further inquiry, was deemed satisfactory, and a contract was made with him. He was carried to New Bedford, and there shipped for a whaling voyage, on board of the respondent's ship. and signed articles at a lay of one one-hundred and ninetieth. He proceeded on the voyage round Cape Horn, to the Pacific and Arctic Oceans, where the ship was nearly filled with sperm and whale oil. On her homeward voyage she stopped at the Sandwich Islands, where the son deserted. being still a minor. The ship then returned, without him, to New Bedford, and the whole proceeds of the voyage were delivered to the respondent.

The desertion is now relied upon as a defence to this libel. and it is insisted by the respondent that all right to any share or compensation was thereby forfeited. But even in case of a seaman of full age, a desertion merely, under the general maritime law, does not necessarily work a forfeiture of all antecedent earnings; it is a matter within the discretion of the court. As against the claim of the libellant, a desertion, even under the statute, is no defence. The son was a minor, both when he formed, and when he dissolved, his connection with this ship.

It is not shown that the desertion occasioned any loss or inconvenience to the respondent, nor is any to be presumed. The ship was only to be navigated home, which requires a smaller number of hands than the taking of whales. This young man rendered faithful and valuable services to the respondent for the term of fourteen months. His time and labor belonged to his father, who now claims compensation therefor. And it is no answer to say that the son refused to perform further service. The claim is as well founded in law as it is in justice.

The next question is, what shall be the amount of compensation to the libellant? The only means furnished by the evidence of determining what that shall be, is the lay stipulated for in the articles; that is not necessarily the rule of damages, in cases like the present, and the libellant might have introduced other evidence, and the court might have adopted a different basis of calculation. But as this case has been presented to me, I shall give to the libellant the stipulated share of the proceeds, making up the voyage in the same manner as in case of a seaman of full age, who has been justifiably separated from the ship before the termination of the voyage. By the articles, if this young man had performed the whole voyage, he would have been entitled to one one-hundred and ninetieth of the proceeds. The libellant is to have such proportion of that one one-hundred and ninetieth, as the time of service bore to the whole time of the voyage.

In the accounts presented by the respondent, several items have been objected to; the first is the charge of commissions for disposing of the oil and bone, and settling the voyage. The obligation to do this is assumed by the owner in the ninth article of the shipping articles; it is a part of his contract, and he has no more right to make a charge against the seaman for performing the contract, than the latter has to make a charge against the owner for performing the duty of a seaman. The ship's husband may charge his co-owners a compensation by commission or otherwise, but that is no concern of the seaman.

The next is a charge of ten dollars for preparing the vessel for sea. This is founded upon the supposition that the seaman. by his contract, is bound to labor in such preparation, and that he has neglected to do so, and thereby occasioned expense to the owner. Where it is proved that the seaman has been called upon to perform that service, and has refused or neglected to do so, it may be reasonable that he should pay such expense. but there is no such proof in the present case. No opportunity was given to this young man to perform this labor himself, although it appears that he was in New Bedford between two and three weeks before the sailing of the vessel, and it would have been better for him to have been employed on board of her, than exposed to the temptations of idleness during that time. This item cannot be allowed.

The next charge is Macomber's bill, which the libellant's counsel says contains a charge of five dollars paid to the former, as a bounty for engaging this young man. That is, in a settlement under a contract, one of the parties charges the other a sum of money paid to a third person, to procure the other to enter into the contract. Such a claim is inadmissible.

The next item is insurance. Before sailing on the voyage, the seaman obtained certain outfits on credit, and gave to the outfitter an order on the owner, which the latter accepted and paid, the owner thereby became a creditor, and beside the personal liability of the seaman, held the proceeds of his voyage as security, and now charges insurance on the amount paid. No insurance was effected at the request of the seaman, or which could in any event enure to his benefit. But the claim is for the risk, that the earnings would not be sufficient to pay for the outfits. That is, when a debtor is ready to pay the whole amount of his debt, a creditor demands a further sum for the hazard, which he originally incurred, of the solvency of the debtor. This charge must be disallowed.

It is urged that all these charges are usual in New Bedford. I have not thought it necessary to receive evidence of such usage, because the claims are of such a character that usage cannot give them validity. A practice to allow them must have had its origin in the ignorance and necessities of the seamen, and could not have arisen between parties standing on equal grounds. Other items in the account were objected to, some on the ground that they were not necessaries for a minor, and others as inadmissible even against an adult, but an agreement between parties precluded the necessity of the court's making any decision thereon. Decree for the libellant.

See Luscom v. Osgood [Case No. 8,608]; Gladding v. Constant [Id. 5,468]: Gifford v. Kollock [Id. 5,409]; Swain v. Howland [Id. 13,-661].